# Ex parte Hawkins.

*Mandamus in matter of Re-Taxation of Costs.*

1. *Selling lottery-tickets; solicitor's fee on conviction.*—An indictment which charges, in its first count, that the defendant "did sell, or receive money for a lottery or gift-enterprise ticket," and in the second that he

"did sell, or receive money, or take an order for a ticket in the Mexican National Lottery," &c., is founded on section 4069 of the Code, and not on section 4068; and on conviction, the solicitor's fee is not $150, but $7.50.

APPLICATION by petition by James E. Hawkins, as solicitor for Jefferson county, for a *mandamus* to the Criminal Court of said county, Hon. S. E. GREENE presiding, to compel that court to vacate and annul an order re-taxing the costs in a case therein lately pending against one Charley Marx, by which the solicitor's fee was reduced from $150, as first taxed by the clerk, to $7.50. The case against Marx was a prosecution by indictment containing two counts, the first of which charged that he "did sell, or receive money for a lottery or gift-enterprise ticket;" and the second, that he "did sell, or receive money, or take an order for a ticket in the Mexican National Lottery, or in the Louisiana State Lottery, against the peace," &c. The defendant pleaded guilty, and the court imposed a fine of $100, which he at once paid; and the clerk, in taxing the costs, having included a solicitor's fee of $150, the court reduced it to $7.50 on the defendant's motion.

JAS. E. HAWKINS, *pro se.* for the petitioner.

STONE, C. J.—The indictment in this case, each count of it, is framed under the statute "To prohibit the sale of lottery or gift-enterprise tickets in this State," approved February 7, 1876.—Sess. Acts, 289; Code of 1876, § 4446; Code of 1886, § 4069. This case, then, is not in any respect distinguishable from *Ex parte Tompkins*, 58 Ala. 71, and relief must be denied on the authority of that case.

Lest this ruling, and that in *Ex parte Tompkins, supra,* may mislead, we feel it our duty to state, that should the question again come before us, we are not prepared to say we would adhere to the ruling in *Solomon v. State,* 27 Ala. 26, or to the intimation in *Tompkins' Case,* that the act approved February 7, 1876, did not in part supplant the older statute. The statute construed in *Solomon's Case* declares, in its first clause, that no one shall set up, carry on, or be concerned in setting up, or carrying on a lottery, &c. This must refer to a lottery set up or carried on in this State, for Alabama has no authority to punish any act done outside of its own jurisdiction. Setting up or carrying on a lottery in another State, or in a foreign country, can not offend the laws

of Alabama, any more than any other act done beyond her jurisdiction can be a violation of her laws. Passing to the second clause, it makes it an indictable offense to sell lottery-tickets, or shares, not in every lottery, but in "such lottery." This word *such* must refer to the preceding clause, and makes it an offense to sell tickets only in those lotteries which it had just declared should not be set up or carried on—lotteries it had the power to interdict. It is worthy of consideration, whether the sale of tickets in a lottery set up or carried on outside of Alabama was an offense against our laws, until the approval of the act of February 7, 1876.

*Mandamus* denied.